Olu K. Orange, Esq. (SBN 213653)
o.orange@orangelawoffices.com
ORANGE LAW OFFICES
3435 Wilshire Boulevard, Suite 2910
Los Angeles, California 90010
TEL:  (213) 736-9900 / FAX:  (213) 417-8800

MONIQUE D. PRESSLEY (*pro hac vice* motion pending)
mdpressley@thepressleyfirm.com
THE PRESSLEY FIRM PLLC
1629 K Street, NW Suite 300
Washington, DC 20006
TEL: (202) 973-0181 / FAX: (240) 235-3388

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY S. JOHNSON and  BLAKE KELLER,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DAVID KNOLLER, STARZ ENTERTAINMENT LLC, ANCHOR BAY ENTERTAINMENT LLC, CBS TELEVISION, MARK CANTON, RANDALL EMMETT, NIKKI TURNER, CURTIS JACKSON, COURTNEY KEMP ABGOH and DOES 1 through 10,<br><br>                    Defendants. | CASE NO. CV16-07761<br><br>**COMPLAINT**<br><br>1. COPYRIGHT INFRINGEMENT<br><br>*(supplemental state law claims)*<br>2.      FRAUD<br>3.      BREACH OF CONTRACT<br><br><br>JURY DEMAND |

Plaintiffs, LARRY S. JOHNSON ("Johnson) and BLAKE KELLER ("Keller") (collectively,  "Plaintiffs"), through their attorneys, OLU  K.  ORANGE,  and MONIQUE D. PRESSLEY, aver as follows:

1

## PRELIMINARY STATEMENT

1.  Plaintiffs bring this action seeking to put an immediate stop to, and to obtain redress for, Defendants' blatant, purposeful and massive infringement of the copyright in Plaintiff Johnson's two-part manuscript entitled "Tribulations of a Ghetto Kid."

2.  Plaintiff Johnson is a published author who has written numerous books and short stories including "Cold Blooded," "Black Girl Found," "Firebug" and the infringed manuscript "Tribulations of a Ghetto Kid."  Plaintiff Keller assisted Johnson as editor of the infringed manuscript.  At the time of the writing of the infringed manuscript, both Johnson and Keller were incarcerated.

3.  Johnson and Defendant Turner, who knew each other for years before Johnson was incarcerated and before Turner became a successful author, formed an agency relationship during Johnson's incarceration.  The two entered into an agreement by which she agreed to make every effort to sell his literary works for a fee.  After her review of "Tribulations," the two even collaborated on an anthology project, "Street Chronicles", which was ultimately published. During this time, Turner also shared with Johnson the news of a book publishing business relationship with Defendant Jackson, and told Johnson he would be "the next best thing" with the publishing of "Tribulations" in the near future.

4.  Recognizing Johnson's talent, and also recognizing her own advantageous position due to Johnson's incarceration, in a brazen and improper effort to capitalize on Johnson's creative work and adverse circumstances, Turner shared "Tribulations" with Defendants, after which by copyright infringement, theft, fraud and breach of contract, they created, aired and distributed the Infringing Work "Power" which prominently features significant portions of "Tribulations" without authorization from Johnson and now enjoys considerable success and popularity as one of the anchor scripted programs of

2

the STARZ Network.

5.    Defendants' conduct is causing, and unless immediately enjoined, will continue to cause enormous and irreparable harm to Plaintiffs. Defendants may not continue to exploit Plaintiffs' manuscript without authorization in order to further their own gain. Defendants' conduct must immediately be stopped and Plaintiffs must be compensated for Defendants' wrongful acts.

## JURISDICTION AND VENUE

6.    This court has jurisdiction in this action over the subject matter of the first claim under 28 U.S.C. §§ 1331 and 1338(a). This court has supplemental subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Defendants are subject to personal jurisdiction in the Central District of California because each resides in this District, is doing substantial business in this District, and/or engaged in the alleged wrongful acts in this District, including but not limited to displaying, selling and distributing infringing material for display in this District. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

## THE PARTIES

### *Plaintiffs*

7.    Plaintiff LARRY S. JOHNSON is an author of novels and short stories, is the author of the two-part manuscript entitled "Tribulations of a Ghetto Kid," (U.S. Copyright Office Reg. No. (TXu001119826 / 08-27-2003)), "Tribulations of a Ghetto Kid: 2," (U.S. Copyright Office Reg. No. (TXu001181415 / 05-25-2004)), together referred to hereinafter as the "Protected Work". Plaintiff Johnson is the legal and beneficial owner of the Protected Work. Plaintiff Johnson is a resident of Richmond, Virginia.

8.      Plaintiff BLAKE KELLER edited, organized and assisted in the development of the Protected Work. Plaintiff Keller has a legal and beneficial interest in the Protected Work. Plaintiff Keller is a resident of Washington, D.C.

### *Defendants*

9.      Upon information and belief, defendant DAVID KNOLLER ("KNOLLER") is a resident of the State of California having an address of 9242 Beverly Boulevard, Suite 200, Beverly Hills, CA 90210-3731.

10.     Upon information and belief, defendant STARZ ENTERTAINMENT, LLC ("STARZ") is a limited liability corporation organized under the laws of the State of Delaware with offices within this District at least at 9242 Beverly Boulevard, Suite 200, Beverly Hills, CA 90210-3731.

11.     Upon information and belief, defendant ANCHOR BAY ENTERTAINMENT, LLC ("ANCHOR BAY") is a limited liability corporation organized under the laws of the State of Delaware with offices within this District at least at 9242 Beverly Boulevard, Suite 201, Beverly Hills, CA 90210-3731.

12.     Upon information and belief, defendant CBS TELEVISION ("CBS") is a limited liability corporation organized under the laws of the State of Delaware with offices within this District at least at 4024 Radford Ave., Administration Bldg. Ste. 410, Studio City, CA 91604-2101.

13.     Upon information and belief, defendant MARK CANTON ("CANTON") is a resident of the State of California having an address of 9242 Beverly Boulevard, Suite 200, Beverly Hills, CA 90210-3731.

14.     Upon information and belief, defendant RANDALL EMMETT ("EMMETT") is a resident of the State of California having an address of 9242 Beverly Boulevard, Suite 200, Beverly Hills, CA 90210-3731.

15. Upon information and belief, defendant NIKKI TURNER ("TURNER") is a resident of the State of Virginia having an address of 3016 Fendall Ave, Apt A, Richmond, VA 23222.

16. Upon information and belief, defendant CURTIS JACKSON ("JACKSON") is a resident of the State of New York having an address of 1325 Avenue of the Americas, New York, NY 10019.

17. Upon information and belief, defendant COURTNEY KEMP ABGOH ("ABGOH") is a resident of the State of California having an address of 9242 Beverly Boulevard, Suite 200, Beverly Hills, CA 90210-3731.

18. The identities, capacities, and/or or nature of involvement of Defendant DOES 1 through 10 ("Doe Defendants") are presently unknown to Plaintiffs. Plaintiffs therefore sue such persons using "Does" as fictitiously-named defendants. Plaintiffs are informed, believe, and thereupon allege that there is likely to be evidentiary support to prove that each Doe Defendant was involved in some manner and legally responsible for the acts, omissions, and/or breaches of duty alleged herein. Plaintiffs will amend the Complaint to name the Doe Defendants upon learning their true identities and roles in the actions complained of herein.

19. The material facts, acts, omissions, events, and circumstances herein mentioned and described occurred in the County of Los Angeles, State of California, and the corporate and/or entity Defendants, and each of them, are doing substantial business in this District, and/or engaged in the alleged wrongful acts in this District, including but not limited to displaying, selling and distributing infringing material for display in this District.

20. Plaintiffs are informed, believe, and thereupon allege that any Defendants who may have been employed by and/or the subsidiaries of any other Defendant(s) were, at all times relevant and material to this Complaint, acting within the

5

course and scope of their employment and/or agency relationship(s) with other Defendant(s).

21.  Plaintiffs are informed, believe, and thereupon allege that each of the Defendants, acting individually and/or in concert with each other, engaged in a common plan to wrongfully deprive Plaintiffs of their respective rights, ownership and beneficial interests in the Protected Work.  Each and all of the things done by each Defendant against Plaintiffs, as mentioned in this entire Complaint, were done, in conspiracy and with full permission, knowledge, approval, ratification, and support of each other Defendant.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### *Defendants' Access to the Protected Work*

22.  Plaintiff Johnson wrote the Protected Work and all of his other works under the pen name "The Ghost."

23.  In or around late 2005, Johnson communicated with Defendant Turner, whom he had known socially for over a decade through a mutual friend, in the hopes of her assisting him in getting the Protected Work published. Johnson communicated with Turner and had a copy of the Protected Work delivered to Turner.

24.  After receiving a copy of the Protected Work, Ms. Turner began to initiate more and more contact with Plaintiff Johnson, communicating regularly via phone and mail.

25.  At the same time that Ms. Turner received the Protected Work, she began working with Defendant Jackson to develop projects to distribute literary material about the sex, guns, cash, brutal highs and short lives of persons involved in legally questionable situations in tough city streets. In the same

6

year, with Ms. Turner employed by Jackson's company, to wit, G-Unit Books, Jackson also endeavored to develop television and film material based upon the same subject matter – to which Johnson's Protected Work is completely devoted.

26. During this time period, Turner and Johnson shared numerous discussions about her publishing the Protected Work in the near future and Turner told Johnson that he was going to be the "next best thing" in the literary world. Turner was so excited about Johnson's talent that she proposed representing him as his agent, representing him in his effort to get his materials published and stories sold.  He agreed and they executed a purported agency agreement.

27. Turner also asked Johnson to collaborate with her on an anthology project entitled "Street Chronicles: Tales From Da Hood" by contributing one of the short stories.   Johnson, who was incarcerated at all times relevant to his interaction with Turner regarding his works, depended upon Turner keeping her word and acting with professional integrity, as he had limited ability to explore and verify potential deals on his own. When the business relationship ended, due to Johnson's not being paid timely for his work on the anthology, Turner still had in her possession a copy of the Protected Work, and was still employed by Jackson's company.

28. Over a decade after Johnson authored the Protected Work and registered it, "Power" aired on the Starz Network with Jackson at the helm as one of the executive producers.  Defendants have advanced various claims about the show's origination. Though Defendant Agboh is given credit as the show's creator, it is clear from numerous interviews that the original development of the show was heavily sourced from Defendant Jackson.  It is also claimed that Power was birthed out of a conversation between Defendants Jackson and Canton.  (see New York Times July 27, 2014 article:

7

http://www.nytimes.com/2014/07/27/arts/television/courtney-kemp-agboh-runs-power-with-50-cents-input.html.)

29.   Plaintiffs are informed and believe that the Protected Work was unlawfully, knowingly and intentionally transferred by Defendant Turner to Defendant Jackson at or near the time she was employed by and/or in a business relationship with him. Thereafter, Defendant Jackson and/or Turner caused the Protected Work to be transferred to each of the other Defendants. The Protected Work was then incorporated into, published, held out and/or sold as, the Infringing Work by Defendants, and each of them.

30.   Defendants have no license, authorization, permission or consent to make use of the Protected Work.

31.   On June 6, 2016, Plaintiff Johnson sued each defendant except Anchor Bay, upon the same claims of infringement herein (Case No. VAED CV16-0088, Doc. No. 3). Defendants were served with Plaintiff Johnson's lawsuit on August 4, 2016 (*Id* at Doc. No. 6), and counsel for Defendant STARZ filed motions to appear *pro hac vice* on August 16, 2016 (*Id* at Doc. Nos. 7,8). Thus, Defendant STARZ was on notice of Plaintiff Johnson's claims of infringement. Nonetheless, STARZ presently continues to publicize and distribute the Infringing Work, having recently renewed its production of the Infringing Work for two additional broadcast seasons.

### Defendants' Copying of the Protected Work

32.   Both the Protected Work and the Infringing Work (collectively, "both Works") explore the life of an African-American protagonist drug dealer using his ill-gotten gains to transition into the realm of legitimate business. In both Works, the protagonist has a love interest, a side-kick, and gratuitous profanity and violence are ever-present.

8

33.   However, looking beyond the basic elements of many "bad man from the streets turned good" stories, the Infringing Work goes so far as to borrow character names, plot lines, and nearly identical language, from the Protected Work, making one strikingly similar to the other. By way of example, infringing similarities include, but are not limited to those set forth in paragraphs 32 through 46 herein.

34.   A first, clear, and blaring example of Defendants' infringement is the name of Power's protagonist—*Ghost*—the pen name Plaintiff Johnson used when he authored the Protected Work 12 years prior.

35.   In the Protected Work, the protagonist's name is Prince. The protagonist, as described in both Works, derives confidence from having a "360 degree waves" hairstyle and goatee facial hair. The protagonist is also very well-read and an intellectual.

36.   In both Works, the protagonist has the same long term goal and particular method of achieving it. Both Works chronicle the protagonist's efforts to achieve the goal of turning his drug dealing past into a legitimate future. In both Works, the protagonist's particular methodology of realizing the goal is ownership of a high class multi-level nightclub in a big city, showcasing the hottest musical talent and frequented by celebrities. In the Protected Work, the city is the Southern metropolis, Atlanta, Georgia. In the Infringing Work, it is the Northern metropolis, New York, New York.

37.   Both Works explore the protagonist's internal conflict between his desire to end his criminal activities and his realization that even the legitimate aspects of his life and lifestyle are tied to, and dependent upon, criminal elements.

38.   A man with the particular name of "Pedro" and his friend, both from Miami, supply the protagonist's drugs in Both Works. In both Works, Pedro and his friend are connected with an international drug cartel. In Both Works, the protagonist's most prominent criminal activity involves drug dealing. In Both

9

Works, conflict surrounding how the protagonist acquires his drugs, and from whom, are major story elements factoring into suspense as to the protagonist achieving his long term goal.

39.    Both Works contain scenes with meetings between the protagonist and his Miami drug suppliers wherein external conflict is increased via manipulating suspense as to whether the protagonist will be able to maintain a steady supply of drugs, and hinting at the possibility of increased access and control over the supply. The dialogue is substantively identical:

| Protected Work | Infringing Work |
|---|---|
| "Before we start off doing business, I want to let you know that I've been hearing a lot of negative shit about you. I've already heard about the influence you and your crew have in the city. Imagine if you could supply the whole city with dope and coke. The only way we can do business papa is if you can guarantee the murders will cease." | "You know I checked you out. Your reputation precedes you. Your name is feared on the streets. If you could get this situation under control. Murders/war, you could have your own cartel one day. When I hired you 6 months ago, you guaranteed me a certain level of professionalism. You also guaranteed me a safe and secure pipe line with no interruptions." |

40.    Both Works contain characters in the protagonist's immediate circle of friends named "Angela" or "Angie" with the same physical characteristics, who are present in many of the same interactions. In the Infringing Work, "Angela" is a

10

Latina woman. In the Protected Work, "Angie" is a light-skinned African-American woman who looks like a Latina woman. In addition to the same name and physical characteristics, the characters also have the same personality profiles - lots of mental fortitude, yet relaxed, easy to be around, and able to fit into any situation.

41.  In both Works, the protagonist becomes estranged from his family. After the passing of time, the protagonist and his family reunite at dinner and his wife steps away to shed a tear in private.

42.  The protagonist in both Works hires an attorney whom he pays in advance guard against future difficulties. That attorney is based in New York City. And, in both Works the protagonist is detained, appears at a bail hearing, and the attorney's pretrial release argument focuses heavily on the protagonist's status as a business man. Bail is denied in both Works.

43.  In the Protected Work, the catch phrase "Steppin' It Up" is used as the title of the chapter of the book that focuses on the protagonist's and his associates' rise to power after meeting with his Miami-based drug supplier, Pedro. In the Infringing Work, the protagonist and his associates' rise to power, after meeting with Pedro and his partner out of Miami, is referred to consistently as "steppin' it up."

44.  In both Works, the protagonists' parents are deceased.

45.  In both Works, the protagonist has a friend working for him who was a former college basketball star – "Randy" in the Protected Work and "Shawn" in the Infringing Work. In both Works, the character's basketball career was ended by an injury in which he shattered a joint (ankle/knee).

46.  In both Works, the protagonist's primarily African-American immediate circle is infiltrated by a Caucasian woman who works for the FBI because her boyfriend has penal interests at stake. In both Works, the woman steals a gun from the protagonist and delivers it to the FBI to further their investigation,

11

and with the hopes of benefitting her boyfriend. In the Protected Work, the woman's name is Christy. In the Infringing Work, her name is Holly.

47. Plaintiffs are informed and believe, and on that basis allege, that Defendants knowingly and willfully copied the Protected Work and the protectable expression contained therein, including, but not limited to, the expression of concepts, ideas, plots, themes, dialogue, mood, setting, pace, and characters contained therein. Plaintiffs are informed and believe, and on that basis allege, that Defendants knowingly and willfully copied the original artistic and creative choices that comprise Plaintiffs' expression of the premise and the elements of the Protected Work.

48. The Infringing Work is substantially and/or strikingly similar to the Protected Work.

49. The total concept and feel of the Infringing Work is substantially and/or strikingly similar to the total concept and feel of Plaintiffs' Protected Work.

## FIRST CLAIM FOR RELIEF
### For Direct, Contributory, and Vicarious Copyright Infringement, Against All Defendants

50. Plaintiffs incorporate all paragraphs, as though fully set forth herein.

51. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq.*

52. Defendants did not seek or receive permission to copy or interpolate any portion of the Protected Work into the Infringing Work. All of the elements of the Protected Work copied by the Infringing Work are original to the Protected Work.

53. Defendants' conduct has at all times been knowing, willful, and with

complete disregard to Plaintiffs' rights. As a proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

54. From the date of the creation of the Infringing Work all Defendants have infringed Plaintiffs' copyright interest in the Protected Work including: (a) by substantially copying and publicly displaying, or authorizing the copying and displaying, including displaying the Infringing Work on television, streaming video, video on-demand, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the Infringing Work through the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (c) by substantially copying and the related marketing and promotion of the sale of video recordings of the Infringing Work, and related merchandise; and (d) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of the Protected Work in and as part of the Infringing Work.

55. Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of, the Infringing Work or any of the works, products and/or materials associated with the Infringing Work. The infringement by Defendants has been, and continues to be, willful and knowing.

56. Defendants have reproduced and/or distributed and continue to manufacture, reproduce and distribute large numbers of copies of recordings of the Infringing Work which violates Plaintiffs' copyrights, and are at issue in this lawsuit.

57. Defendants have not only marketed and exploited the works at issue in this lawsuit, but have granted or caused to be granted to various parties, licenses to reproduce and/or distribute the works that are in violation of Plaintiffs' copyrights. With knowledge of the infringement, Defendants have induced,

13

caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

58. Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

59. As a direct and proximate result of Defendants' infringing use of the Plaintiffs' copyrighted material in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106, Plaintiffs have suffered, and will continue to suffer, severe injuries and damages, and are entitled to those damages permitted by federal copyright law, including, but not limited to, compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial, as well as their attorneys' fees and other costs.

60. As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

61. Plaintiffs are entitled to Defendants' profits relating to foreign sales of copies of the Infringing Works that were manufactured, distributed, or otherwise infringed domestically.

62. In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum amount of statutory damages for each act of willful copyright infringement.

63. Plaintiffs are further entitled to a running royalty on all future exploitations of the Infringing Work.

64. Plaintiffs have suffered, and will continue to suffer, irreparable injury as a direct and proximate result of Defendants' infringing conduct, some substantial portion of which cannot be compensated by money damages if

14

such wrongful conduct is permitted to continue. Accordingly, Plaintiffs request that Defendants be enjoined from any further infringing acts.

## SECOND CLAIM FOR RELIEF
### For Fraud per Cal Civ Code § 1710
### Against All Defendants

65.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

66.   This claim arises under the general laws of the California, inclusive of Civil Code Sections 1572, 1709, 1710 and 3294.

67.   Plaintiffs are informed, believe and thus allege that each Defendant knew at all times material to this action that the Infringing Work was unlawfully sourced from the Protected Work and that Defendant Turner, individually and/or as part of Defendant Jackson's company, represented to Plaintiff Johnson that she would assist him in exploiting the Protected Work, yet concealed the fact that the protected work was being exploited by Defendants as the Infringing Work.

68.   Defendants, and each of them, publicly, consistently and constantly hold themselves out – fraudulently and falsely – as being the creators, originators and/or source of the Infringing Work, knowing that it is based upon and derived from the Protected Work.

69.   Plaintiffs are further informed, believe and allege that each Defendant acted pursuant to the agency and consent of each other defendant in concealing from Plaintiff Johnson that the Infringing Work was unlawfully sourced from the Protected Work.

70.   Plaintiffs reasonably relied upon Defendants' fraudulent representations.

71.   As a proximate result of Defendants' concealment and misleading statements and actions, Defendants intentionally diminished the value of the Protected Work, denied Plaintiffs the opportunity to gain publicity and recognition for

15

1    their work, and caused them emotional distress, thereby harming Plaintiffs.

2    72.   Defendants' fraudulent conduct as described herein is oppressive and despicable. Accordingly, Plaintiffs are entitled to an award of punitive damages for each Defendant's perpetration of the aforementioned oppressive and despicable acts set forth herein.

### THIRD CLAIM FOR RELIEF

### Breach of Contract per Cal Civ Code § 1549

### Against Defendants Turner and Jackson

73.   Plaintiffs incorporate all paragraphs, as though fully set forth herein.

74.   This claim arises under the general laws of the California, inclusive of Civil Code Sections 1549.

75.   Defendant Turner, as an agent and/or employee of Defendant Jackson, represented to Plaintiff Johnson that she would assist him in exploiting the Protected Work.

76.   Neither Defendant Turner, nor Defendant Jackson, assisted Plaintiff Johnson in exploiting the Protected Work on his behalf. Instead, they breached the contract by failing to assist Plaintiff Johnson as promised, misappropriating Plaintiffs' work as their own and exploiting it for themselves.

77.   As a proximate result of Defendants' breach, Plaintiffs suffered compensatory and actual damages in an amount to be proven at trial.

### NATURE OF ALL DEFENDANTS' ACTIONS

78.   Defendants acted intentionally, fraudulently and conspiratorially in infringing upon plaintiffs' clearly established interests under United States and California law.

79.   As a result of Defendants' unlawful conduct as alleged herein, plaintiffs have suffered, and will continue to suffer, the above described damages in an amount according to proof, including attorney fees and costs, to remedy the unlawful conduct.

## **PRAYER FOR RELIEF**

80.   **WHEREFORE**, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

*As to the First Claim for Relief Only*

(i)   A declaration that Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

(ii)   A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

(iii)   A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act;

(iv)   If the Court determines a permanent injunction is not the appropriate remedy for the continued infringement of Plaintiffs' rights under the Copyright Act, then pursuant to precedent, be compensated by a running royalty paid on all exploitations of the Infringing Work commencing from the date of judgment and for all amounts not taken into consideration in the judgment

(v)   An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of Defendants as will be proven at trial, including a

Complaint for Damages and Injunctive Relief

finding that Defendants are "practical partners" of each other and jointly and severally liable for the profits of each other, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of willful infringement;

(vi)   An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

***As to the Second and Third Claims for Relief***

(vii)   For compensatory damages as to the contract and fraud claims;

(viii)  For punitive damages as to the fraud claim in an amount sufficient to deter and make an example of each applicable Defendant;

(ix)    For statutory attorneys fees according to proof as to the fraud claim;

***As to All Claims for Relief***

(x)     For pre-judgment and post-judgment interest according to law, as applicable;

(xi)    For costs of suit;

(xii)   For imposition of constructive trust in favor of Plaintiffs and against Defendants for all sums due Plaintiffs; and

(xiii)  For such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 17, 2016.                Respectfully submitted,
                                        ORANGE LAW OFFICES
                                        THE PRESSLEY FIRM PLLC

                                        By: _____
                                            Olu K. Orange, Esq.
                                            Attorney for Plaintiff

18

**JURY DEMAND**

      Plaintiffs hereby demand a trial by jury in this action.


Dated: OCTOBER 17, 2016.        Respectfully submitted,

ORANGE LAW OFFICES

THE PRESSLEY FIRM PLLC


By: _____

          Olu K. Orange, Esq.

         Attorney for Plaintiff